IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TONI E. DAUZAT                                                                                    PLAINTIFF

v.                                                      CIVIL ACTION NO. 1:10-CV-205-SA-DAS

COLLUMS FURNITURE MFG., INC.
and TROY McALISTER                                                                         DEFENDANTS

## ORDER

Plaintiff Toni Dauzat filed suit against Defendants Collums Furniture Manufacturing, Inc., and Troy McAlister on August 26, 2010, alleging sexual harassment, discrimination, and retaliation in violation of federal law, as well as state-law claims of malicious interference with employment, assault and battery, negligence, and intentional infliction of emotional distress. The case was tried in March 2012, and the jury returned a verdict in favor of Plaintiff. Specifically, jury verdict included $25,000 in damages for Plaintiff's federal sexual harassment claim; $50,000 in damages for Plaintiff's state-law assault and battery action; and $25,000 in punitive damages under federal law.[1] Defendants have now filed a motion for a new trial [46], with three separate theories asserted.[2] Defendants first maintain that the "weight of the evidence does not favor the verdict." Second, Defendants proffer that the Court erred in excluding evidence of Plaintiff's "sexual conduct and alcohol and drug use." The fact that there were no African Americans on the selected jury panel in this action is Defendants' third contention. Because the Court

---

[1] The Court notes that Plaintiff withdrew her claims of sex discrimination, retaliation, malicious interference, negligence, and intentional infliction of emotional distress prior to the case being submitted to the jury.

[2] Defendants' new trial motion is limited to just that. That is, Defendants' post-trial motion does not include a renewed motion for judgment as a matter of law.

1

concludes that the jury's verdict is not contrary to the great weight of the evidence presented at trial, the grant of Plaintiff's motion in limine was not in error, and Defendants have failed to demonstrate a violation of the presumed right in civil cases to jury drawn from a "cross-section" of the community, Defendants' motion is denied.³

The Federal Rules of Civil Procedure permit a trial court to grant a new trial based on that court's appraisal of the fairness of the trial and the reliability of the jury's verdict. FED. R. CIV. P. 59. The rule does not specify what grounds are necessary to support such a decision, but states only that the action may be taken "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" FED. R. CIV. P. 59(a)(1)(A); see also Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985). A new trial may be granted, for example, if the district court finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in the course of the trial. See, e.g., Eyre v. McDonough Power Equip., Inc., 755 F.2d 416, 420-21 (5th Cir. 1985); Westbrook v. Gen. Tire and Rubber Co., 754 F.2d 1233, 1241 (5th Cir. 1985); Carson v. Polley, 689 F.2d 562, 570-71 (5th Cir. 1982); Martinez v. Food City, Inc., 658 F.2d 369, 372-74 (5th Cir. 1981); Conway v. Chem. Leaman Tank Lines, Inc., 610 F.2d 360, 363 (5th Cir. 1980). The Court will address each of Defendants' arguments for why a new trial should be granted in turn.

---

³ Per the Court's Local Uniform Civil Rules, "Counsel for respondent must, within fourteen days after service of movant's motion and memorandum brief, file a response and memorandum brief in support of the response. Counsel for movant desiring to file a rebuttal may do so within seven days after the service of the respondent's response and memorandum brief." L. U. CIV. R. 7(b)(4). In this case, Plaintiff filed her response to Defendants' motion on May 16, 2012. The time period for filing a rebuttal to Plaintiff's response has lapsed, and Defendants have not moved for any extensions of time. Accordingly, the Court treats Defendants' new trial motion as ripe for judicial review.

A. Weight of the Evidence

A thorough review of the complete record, transcripts, and notes taken contemporaneous therewith demonstrates that the jury's verdict in favor of Plaintiff Dauzat is neither contrary to nor against the great weight of the evidence presented at trial. "The standard at the trial level on a motion for a new trial is whether the verdict is against the clear weight of the evidence or will result in a miscarriage of justice." G.A. Thompson & Co. v. Partridge, 636 F.2d 945, 957 (5th Cir.1981); Dotson v. Clark Equip. Co., 805 F.2d 1225, 1227 (5th Cir.1986); Pryor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998) (footnote omitted); Pagan v. Shoney's Inc., 931 F.2d 334, 337 (5th Cir.1991) ("in denying motion for new trial, district court does not abuse its discretion-and, *a fortiori*, we may not reverse that decision-unless there is an absolute absence of evidence to support the jury's verdict") (internal quotations omitted). The decision to grant or deny a motion for new trial is within the sound discretion of the trial court. Pagan, 931 F.2d at 337.[4]

Defendants begin by "appropriat[ing] a phrase from adverse possession law," maintaining that Plaintiff failed to corroborate her testimony and demonstrate that Defendant McAlister's alleged sexual harassment was "open, notorious, and visible." It surely goes without stating that neither phrases nor standards gathered from "adverse possession law" govern Title VII. Instead, as outlined in the Court's jury instructions, Plaintiff was required to show as follows: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based upon sex; (4) the harassment affected a

---

[4] The Fifth Circuit has noted that its "review is more narrow when a new trial is denied than when one is granted." Pryor, 138 F.3d at 1026.

term, condition, or privilege of her employment; and (5) respondeat superior.[5] Jones v. Flagship Int'l, 793 F.2d 714, 719–20 (5th Cir. 1986). "To affect a term, condition, or privilege of employment, 'sexual harassment must be sufficiently severe *or* pervasive so as to alter the conditions of employment and create an abusive working environment.'" Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 330 (5th Cir. 2009) (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002) (emphasis added)).

Plaintiff testified that Defendant McAlister engaged in behavior such as biting her shoulder; touching her breasts; touching her rear; telling her that once she "had a black man," "that's all she'd need"; placing a rope or a piece of thread around her neck; and offering her money and drugs in exchange for sex. Plaintiff also proffered testimony from other witnesses about an incident when Defendant McAlister drove by Plaintiff's house on a weekend. While Defendants place a lot of weight on the fact that Defendant McAlister denied such allegations, it was the jury's function to weigh the evidence, decide the material facts, and judge credibility. See Pryor, 138 F.3d at 1028 ("[A]s we have frequently noted, '[w]e are not free to reweigh the evidence and set aside the jury verdict (simply) because the

---

[5] Defendants do not set forth an argument in their new trial motion concerning respondeat superior or the Faragher/Burlington affirmative defense. The Faragher/Burlington defense allows an employer that is subject to vicarious liability due to a hostile work environment claim to avoid liability by showing: "(1) the employer exercised reasonable care to prevent and correct promptly any sexually-harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm or otherwise." Donaldson v. CDB, Inc., 335 F. App'x 494, 500 (5th Cir. 2009). Defendants, in fact, never raised the Faragher/Burlington conjunctive defense pretrial, during trial, nor in the instant motion before the Court. Even so, there was no evidence presented at trial that would lead to the conclusion that the defense was met as a matter of law in this instance.

jury could have drawn different inferences or conclusions or because (we) feel that other results are more reasonable.'") (quoting Taylor v. Fletcher Properties, Inc., 592 F.2d 244, 247 (5th Cir. 1979)). From the evidence and testimony presented, the jury was entitled to conclude that Plaintiff met the aforementioned standard governed by Title VII,[6] and the jury's ultimate verdict was not against the great weight of the evidence. Accordingly, Defendants' motion for a new trial on this ground shall be denied.

B. Motion in Limine

The next argument set forth by Defendants is that they should have been allowed "to introduce evidence concerning Dauzat's sexual precocity, multiple marriages and relationships and drug use in order to paint a picture far different from the one showing Dauzat as the victim of sexual harassment." As Plaintiff aptly notes, Plaintiff filed a motion in limine [27] prior to trial, requesting the Court to exclude the very evidence Defendants now maintain the Court erred in excluding. Defendants entirely failed to respond to Plaintiff's motion in limine. The Court's Local Uniform Civil Rules note as follows, "If a party fails to respond to any motion, other than a dispositive motion, within the time allotted, *the court may grant the motion as unopposed.*" L. U. CIV. R. 7(b)(3)(E) (emphasis added). A motion in limine is not a dispositive motion; thus, the Court had authority under the local rules to grant the motion as unopposed. Nevertheless, the Court also engaged in a

---

[6] Nowhere in Defendants' motion does it assert that the jury's verdict on Plaintiff's "assault and battery" action was against the great weight of the evidence. Instead, the motion focuses on the sexual harassment claim. Given this, the Court cabins its analysis to the arguments actually made by Defendants, see In re Cao, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the Court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the Court's] role is to adjudicate the arguments with which [it is] presented"), yet also notes that the verdict on this claim was also not contrary to the great weight of the evidence presented at trial.

review of the merits of Plaintiff's motion in limine and set forth its ruling at trial. First, the Court found the majority of evidence irrelevant under Federal Rule of Evidence 401. More importantly, however, the Court also undertook a balancing test under Federal Rule of Evidence 403, and concluded that the danger of unfair prejudice substantially outweighed the probative value of the evidence. Defendants were granted latitude in their cross examination of Plaintiff, and the Court finds that it did not err in granting Plaintiff's motion in limine and excluding the evidence Defendants now assert should have been admitted. As such, the new trial motion on this ground is denied.

C. Cross-Section Requirements

Defendants next argue that they should be granted a new trial because there were no African Americans on the jury. Because Defendants have failed to prove a violation of any cross-section requirements that might be applicable, their new trial motion is due to be denied.[7] At the outset, and before addressing the merits, the Court points out that the right to a jury in civil cases is based on the Seventh Amendment[8] and, while the Sixth Amendment does require in *criminal* cases that the jury pool be drawn from a fair cross-section of the community, see Taylor v. Louisiana, 419 U.S. 522, 530, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975), "the Supreme Court has not recognized a Constitutional mandate that jury pools in civil cases reflect a fair cross-section of the community," see Fleming v. Chicago Transit Authority, 397 F. App'x 249, 2010 WL 4140416, at *1 (7th Cir. 2010). In McCall v. Shields Associates, Inc., the court noted that Duren v. Missouri, 439 U.S. 357,

---

[7] It is important to note that Defendants made no objection at trial to the racial composition of the jury panel.
[8] See U.S. CONST. amend. VII

6

364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979) and Taylor v. Louisiana, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975) "are not applicable to this case as they address the Sixth Amendment right (made applicable to the states by virtue of the Fourteenth Amendment) of *criminal* defendants to a jury draw from a fair cross-section of the community . . . By its terms, the Sixth Amendment has no relevance to civil proceedings but instead serves to guarantee[ ] an impartial jury trial in *criminal* proceedings." 617 F. Supp. 244, 246 (D.C.C. 1985) (emphasis and brackets in original, internal quotations and citations omitted).[9] While the Fifth Circuit has not directly addressed the issue, the court, in Timmel v. Phillips, "assume[d], without deciding, that the fair cross-section requirement is similarly required by the Constitution in civil cases." 799 F.2d 1083, 1086 n.5 (5th Cir. 1986). Given this, the Court will also assume—without deciding—that such cross-section requirements are applicable in civil actions.[10]

To establish a prima facie violation of the right to cross-section, Plaintiff must show:

---

[9] The court in McCall directly addressed the Supreme Court's decision in Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S. Ct. 984, 90 L. Ed. 1181 (1946) – a case in which the defendant in McCall relied on. In Thiel, a plaintiff employed as a daily wage earner who had brought a personal injury claim challenged the jury verdict in favor of the defendant railroad by arguing that all persons who worked for a daily wage had been excluded from the jury list. The clerk of the court and jury commissioner admitted in their testimony in that case that this exclusion had been made "deliberately and intentionally." Thiel, 328 U.S. at 221, 66 S. Ct. 984. As noted by the court in McCall, "[w]ithout identifying any constitutional basis, the [Supreme] Court stated that: 'The American tradition of trial by jury, considered in connection with either criminal or civil proceedings contemplates an impartial jury drawn from a cross-section of the community.'" McCall, 617 F. Supp. at 246 n.4 (quoting Thiel, 328 U.S. at 220, 66 S. Ct. 984).

[10] It is noteworthy that Congress has legislatively mandated that federal juries in both civil and criminal cases be "selected at random from a fair cross section of the community in the district or division where the court convenes." The Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-74, 1861 (2006).

(1) that the group alleged to be excluded is a 'distinctive' group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579, 587 (1979). Plaintiff here alleges that African Americans have been "systematically excluded" from serving on juries. The Court cabins its inquiry to the second and third elements of the Duren analysis, finding the first prong of Duren satisfied here. To prove their cross-section claim, Defendants submit U.S. census figures representing the African American population in Aberdeen, Monroe County, and the State of Mississippi. However, Defendants failed to introduce any evidence establishing that the representation of African Americans on Eastern Division venires is not fairly and reasonably related to the number of such person in the community *who are qualified to sit on a jury*. Duren does not require that "juries actually chosen must mirror the community." Taylor, 419 U.S. at 538, 95 S. Ct. 692. "The fair-cross-section requirement does not guarantee jur[ies] of any particular composition. Rather, it only guarantees that the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups." Paredes v. Quarterman, 574 F.3d 281, 289 (5th Cir. 2009) (internal quotations and citations omitted).

As to the third prong of Duren, the alleged underrepresentation of the distinct group in jury venires must have been the result of systematic exclusion in order to constitute a violation of the fair cross-section of the community requirement—that is, the group's

alleged exclusion from a venire must have been due to some factor inherent in the jury selection process. It is the burden of the party challenging the jury selection process to make this showing, see United States v. Aponte-Suarez, 905 F.2d 483 (1st Cir. 1990), and that party must demonstrate not only that the distinctive group is not adequately represented *on the party's jury venire*, but also that this is the *general practice of other venires*. See Timmel, 799 F.2d 1083. The Supreme Court cases that have addressed the cross-section issue have examined the selection process of a number of jury venires over a period of time. See, e.g., Duren, 439 U.S. at 366, 99 S. Ct. 664 (reviewing the discrepancies both over a period of nearly a year and in the petitioner's specific case); Taylor, 419 U.S. at 524, 95 S. Ct. 692 (examining a time period of almost one year). In Duren, the Court found that the petitioner's "demonstration that a large discrepancy occurred not just occasionally but *in every weekly venire for a period of nearly a year* manifestly indicates that the cause of the underrepresentation was systematic. . . ." 439 U.S. at 366, 99 S. Ct. 664 (emphasis added). Here, in stark contrast to Duren, Defendants only present bare statistics regarding the breakdown in population of African Americans in Mississippi. Defendants, however, make *no* showing of the selection process of a number of jury venires over a period of time, and Defendants' proffer of blanket statistics utterly fails to mount a constitutional challenge proving a systemic exclusion of African Americans.[11] Accordingly, Defendants have failed

---

[11] It is at least noteworthy that many courts have held that if the essential principles of the Jury Selection and Service Act – i.e., random selection and objectivity – are satisfied, then a fair cross-section will result. 33 FED. PROC., L. ED. § 77:158 (citing United States v. Briggs, 366 F. Supp. 1356 (N.D. Fla. 1973)); see also United States v. Rosenthal, 482 F. Supp. 867 (M.D. Ga. 1979) (finding that the fact the jury plan operates randomly and objectively is sufficient to withstand a statutory or constitutional challenge and noting that the court found no reported decisions in which a federal district court jury-selection plan

9

to demonstrate a violation of the right to cross-section, assuming such a right exists in civil cases under the Seventh Amendment, in the jury selection procedures applicable to the Northern District.

The Supreme Court has also recognized that the Equal Protection Clause protects against discrimination exclusion or substantial underrepresentation of persons from petit or grand juries. See, e.g., Castaneda v. Partida, 430 U.S. 482, 493-94; 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977); Hernandez v. Texas, 347 U.S. 475, 477, 74 S. Ct. 667, 98 L. Ed. 866 (1954). The test for establishing an Equal Protection Clause violation is as follows:

> The first step is to establish that the group [that was substantially underrepresented] is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, *over a significant period of time*. Finally, [ ] a selection procedure that is susceptible of abuse or is not racially neutral supports the *presumption of discrimination* raised by the statistical showing.

Castaneda, 430 U.S. at 494, 97 S. Ct. 1272 (citations omitted) (emphasis added). Defendants, as discussed above, failed to present the Court with a comparison between the proportion of African Americans in the total population to the proportion called to serve as jurors, much less a comparison "over a significant period of time." Defendants additionally failed to establish that the selection process is not racially neutral or that it is susceptible of abuse. Accordingly, any Equal Protection challenge made also fails.

---

adopted under the guidelines of the Act had been found to violate the Act or Constitution and that in every case where a system of jury selection has been declared unconstitutional, the presence of a subjective selection process offering at least the opportunity to discriminate was a major, if not determinative, factor).

While Defendants appear to base their cross-section argument solely on constitutional grounds, the Court nonetheless also addresses this argument under the Jury Selection and Service Act. In 1968, Congress reformed the federal jury system and enacted the Jury Selection and Service Act (the "Act"). See Pub. L. No. 90-274, 82 Stat. 53 (1968) (codified as amended at 28 U.S.C. § 1861-1869 (2000)). The Act provides that, "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Under the Act, Congress "established the machinery by which the state policy was to be implemented." Taylor, 419 U.S. at 529, 99 S. Ct. 664 (citing 28 U.S.C. §§ 1862-1866). The "test" (i.e., the analysis stemming from the Supreme Court's decision in Duren) for providing a prima-facie violation in the selection of a cross-section is essentially the same for challenges under both the Sixth Amendment (and presumably the Seventh Amendment) and 28 U.S.C. § 1861. See, e.g., United States v. Cannady, 54 F.3d 544, 546-47 (9th Cir. 1995). Thus, even if Defendants attempted to bring a legislative challenge under the Act, it would fail for fundamentally the same reasons as the constitutional challenge discussed *supra*.[12]

---

[12] An argument often arising in the context of cross-section challenges under the Act is whether jury selection plans must be draw from the entire district, rather than a single division. While Defendants failed to allege such, the Court notes that this argument, even if made, would nonetheless fail to establish a violation of the Act. The Act specifically contemplates that separate jury selection plans may be adopted for divisions within a district. See 28 U.S.C. § 1863(a). There is no constitutional or statutory right to a jury drawn from an entire district where there is a plan encompassing divisions. See Cannady, 54 F.3d at 547; United States v. Florence, 456 F.2d 46 (4th Cir. 1972); see also Zicarelli v. Dietz, 633 F.2d 312, 316-18 (3d Cir. 1980) (there is no constitutional right to a jury selected from

For the foregoing reasons, Defendants' motion for a new trial is DENIED. The grant of Plaintiff's motion in limine was not in error, the jury's verdict does not go against the great weight of the evidence, and Defendants have entirely failed to demonstrate a violation of the presumed right in civil cases to jury drawn from a "cross-section" of the community.

So ORDERED on this, the    **12th**    day of    **June**   , 2012.

**/s/   Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**

---

the whole district despite demographic differences between divisions); United States v. Gottfried, 165 F.2d 360, 364 (2d Cir. 1948) ("There are probably no districts in the Union, which can be divided without disclosing in the sections different racial, religious, political, social or economic percentages. To demand that they shall not, would be a fantastic pedantry which would serve no purpose and would put an end to the statute"); Ruthenberg v. United States, 245 U.S. 480, 482, 38 S. Ct. 168, 169, 62 L. Ed. 414 (1918) ("the proposition [that the Sixth Amendment was violated where the jury was not drawn from the whole district] disregards the plain text of the Sixth Amendment . . . expressly authorizing the drawing of a jury from a part of the district . . . .").

      Only in those cases where the use of a division instead of the entire district constitutes "gerrymandering," resulting in the systematic exclusion of a "distinctive group" from participation in any jury selection system, is there a potential violation. See, e.g., Cannady, 54 F.3d at 547; United States v. Test, 550 F.2d 577, 594 (10th Cir. 1976) ("the partitioning of a district into jury divisions is sanctioned by the statute [28 U.S.C. § 1863(a) and § 1869(c)], and it is clearly not unconstitutional, absent evidence that some cognizable group has been systematically excluded by 'gerrymandering' the division lines"). There has been no evidence presented of gerrymandering in the Northern District, and the division of districts by counties is a practice that has long been accepted. See, e.g., United States v. Guy, 924 F.2d 702, 705 (7th Cir. 1991) (divisions were made by counties); United States v. Newman, 549 F.2d 240, 242 n.2 (2d Cir. 1977) (same); see also 28 U.S.C. § 1869(e).